```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TENNESSEE
                        WESTERN DIVISION
```

```
JEFFREY P. BECKHAM,              )
                                 )
     Petitioner,                 )
                                 )
vs.                              )    No. 05-2187-JDB/tmp
                                 )
DAVID MILLS,                     )
                                 )
     Respondent.                 )
                                 )
```

ORDER DENYING RESPONDENT'S MOTION TO DISMISS
ORDER OF <u>SUA</u> <u>SPONTE</u> DISMISSAL
ORDER DENYING CERTIFICATE OF APPEALABILITY
AND
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

Petitioner Jeffrey P. Beckham filed a <u>pro se</u> petition pursuant to 28 U.S.C. § 2254 on March 8, 2005. On April 13, 2007, the Court ordered Respondent, David Mills, to file a response to the petition. On May 11, 2007, Mills filed a motion to dismiss the petition. On May 15, 2007, Respondent filed a motion to supplement the motion to dismiss. The Court granted the motion to supplement on May 16, 2007. On May 25, 2007, Beckham responded to the motion to dismiss.

I.   <u>UNDERLYING FACTS AND STATE COURT PROCEDURAL HISTORY</u>

A Hardin County jury convicted Beckham of aggravated assault. The trial Court sentenced him to five years imprisonment as a Range I standard offender. Beckam appealed, contending that the evidence

was insufficient to support his conviction, his sentence was excessive, and the trial court erred in denying probation. The Tennessee Court of Criminal Appeals summarized the facts as follows:

> The Defendant was convicted of aggravated assault for pointing a shotgun at Jamie Davis on August 31, 2001. Mr. Davis testified that as he was driving out of the parking lot of the Oil Express, located near K & M Market in Hardin County, Tennessee, he observed the defendant, his former brother-in-law, gesture toward him with his middle finger. Mr. Davis' pregnant wife and their two-year-old daughter were passengers inside his vehicle. Mr. Davis rolled down his window and asked the defendant "what his problem was." He stated he was unable to hear the defendant's response because the defendant's radio was loud.
>
> Mr. Davis testified that the defendant then walked to the bed of his pickup truck and retrieved either a shotgun or a rifle from his toolbox. The defendant placed the gun on his shoulder and aimed it toward Mr. Davis. Mr. Davis stated he was frightened and believed the defendant was going to shoot him. Mr. Davis testified he then drove to City Hall and reported the incident to the police.
>
> Dina Davis, the victim's wife testified that while she, her husband, and their daughter were exiting the parking lot, she observed the defendant gesture toward her husband with his middle finger. Her husband then rolled down his window and questioned the defendant regarding his reason for making the gesture. Mrs. Davis stated the defendant was "mouthing," but she was unable to hear what he said.
>
> Mrs. Davis testified the defendant retrieved a gun from his toolbox in the bed of his truck. The defendant placed the gun on his shoulder and aimed it toward her husband. Mrs. Davis stated she was a "nervous wreck," and pushed her daughter down in her car seat, while she ducked down in her seat. She further stated that as they were driving away, she looked out of the window and observed the defendant continuing to point the gun at them.

> Officer Kenneth Thompson of the Savannah Police
> Department testified that after Mr. Davis reported the
> incident to him, he attempted to locate the defendant.
> The officer stated he observed the defendant's vehicle
> parked at Bobby Beckham's garage located near K & M
> Market. The officer then observed the defendant coming
> from the building while holding a gun. Officer Thompson
> drew his gun on the defendant and ordered him to lay down
> his weapon. The defendant complied and held up his arms.
>
> Officer Thompson stated the gun in the defendant's
> possession was a Mossberg twelve-gauge shotgun which was
> loaded with four rounds, including one round in the
> chamber. The officer testified that when he questioned
> the defendant regarding his reason for possessing the
> loaded weapon, the defendant stated he planned to sell
> the gun.
>
> Bobby Beckham, the defendant's cousin and owner of
> Beckham's Garage, testified he observed the defendant at
> the garage in possession of the gun. He stated that
> people occasionally sold and purchased guns at the
> garage.
>
> The defendant testified that on the day of the incident,
> he had just returned from a hunting trip and was planning
> to sell his shotgun. He stated that while he was getting
> gasoline, Mr. Davis drove up and began cursing at him.
> The defendant testified he may have opened his tool box
> and retrieved the shotgun. He denied pointing the
> shotgun at Mr. Davis. The defendant stated that upon
> returning from the hunting trip, he had unloaded his
> shotgun and reloaded it after Mr. Davis left.

The Court of Criminal Appeals affirmed the trial court's judgment. State v. Beckham, No. W2002-02444-CCA-R3-CD, 2003 WL 22272376 at *1-*2 (Tenn. Crim. App. Sept. 29, 2003), perm. app. denied, (Tenn. Mar. 8, 2004).

Beckham filed a petition for post-conviction relief which was denied by the trial court after an evidentiary hearing. Petitioner appealed and the Tennessee Court of Criminal Appeals affirmed the

3

judgment of the post-conviction court. State v. Beckham, No. W2002-02444-CCA-R3-CD, 2005 WL 2878163 (Tenn. Crim. App. Sept. 29, 2003), perm. app. denied, (Tenn. Mar. 8, 2004).

II.     PETITIONER'S FEDERAL HABEAS CLAIMS

Although the issues Beckham seeks to raise are not clearly enumerated, the petition appears to raise the following issues:

1.  He received hunter safety education and training, had a right to handle firearms, and did not commit any bodily harm;

2.  His arrest was improper and his shotgun was illegally seized;

3.  He was improperly denied a phone call and bail;

4.  He was denied the right to an impartial jury;

5.  He was subjected to an excessive bail, his trial was held on his aunt and uncle's anniversary, he was sentenced on his birthday; and

6.  He should not have been prosecuted "during national security threats and or crisis(s) [sic].

III. ORDER DENYING MOTION TO DISMISS

Respondent contends in the motion to dismiss that Beckham is not in custody. It is proper to consider this preliminary issue and motion to dismiss before addressing the merits of the petition. Section 2254(a) authorizes a district court to entertain § 2254 petitions only for persons "in custody pursuant to the judgment of a state court." 28 U.S.C. § 2254(a); see also 28 U.S.C. § 22419c)(3). The "in custody" determination is made at the time the § 2254 petition is filed. E.g., Carafas v. LaVallee, 391 U.S. 234

4

(1968) (habeas petition is not moot and court is not divested of jurisdiction where petitioner is unconditionally released from custody during pendency of appeal); Sibron v. New York, 392 U.S. 40 (1968); cf. Garlotte v. Fordice, 515 U.S. 39 (1995) (petitioner who is serving consecutive state sentences is "in custody" and may attack the sentence scheduled to run first, even after it has expired, until all sentences have been served). However, in Maleng v. Cook, 490 U.S. 488, 492 (1989) (per curiam), the United States Supreme Court rejected the view that

> a habeas petitioner remains "in custody" under a conviction after the sentence imposed for it has fully expired, merely because of the possibility that the prior conviction will be used to enhance the sentences imposed for any subsequent crimes of which he is convicted.

In so holding, the Supreme Court stressed that, "[w]hile we have very liberally construed the 'in custody' requirement for purposes of federal habeas, we have never extended it to a situation where a habeas petitioner suffers no present restraint from a conviction." Id.

Beckham was incarcerated at the West Tennessee State Prison when he signed his petition on February 4, 2005. He placed the petition in the prison mail system on March 7, 2005. The petition was received and filed by the Clerk on March 8, 2005. Beckham was not released from prison until February 19, 2006. Because Beckham was imprisoned at the time he filed this petition, the "in custody" requirement of 28 U.S.C. § 2254(a) is satisfied and this Court has

jurisdiction over the case. Sanders v. Freeman, 221 F.3d 846 (6th Cir. 2000)(citing Carafas 391 U.S. at 237). The motion to dismiss is thus DENIED.

IV. APPLICABLE LEGAL STANDARDS

    A. Waiver and Procedural Default

    Twenty-eight U.S.C. § 2254(b) states, in pertinent part:

(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

    (A) the applicant has exhausted the remedies available in the courts of the State; or

    (B) (I) there is an absence of available State corrective process; or

        (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

Thus, a habeas petitioner must first exhaust available state remedies before requesting relief under § 2254. See, e.g., Granberry v. Greer, 481 U.S. 129, 133-34 (1987); Rose v. Lundy, 455 U.S. 509, 519 (1982); Rule 4, Rules Governing Section 2254 Cases in the United States District Courts ("Section 2254 Rules"). A petitioner has failed to exhaust his available state remedies if he has the opportunity to raise his claim by any available state

procedure. 28 U.S.C. § 2254(c); Preiser v. Rodriquez, 411 U.S. 475, 477, 489-90 (1973).

To exhaust his state remedies, the petitioner must have presented the very issue on which he seeks relief from the federal courts to the courts of the state that he claims is wrongfully confining him. Picard v. Connor, 404 U.S. 270, 275-76 (1971); Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994). "[A] claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief." Gray v. Netherland, 518 U.S. 152, 162-63 (1996). "'[T]he substance of a federal habeas corpus claim must first be presented to the state courts.'" Id. at 163 (quoting Picard, 404 U.S. at 278). A habeas petitioner does not satisfy the exhaustion requirement of 28 U.S.C. § 2254(b) "by presenting the state courts only with the facts necessary to state a claim for relief." Id.

Conversely, "[i]t is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." Id. When a petitioner raises different factual issues under the same legal theory he is required to present each factual claim to the highest state court in order to exhaust his state remedies. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Pillette v. Foltz, 824 F.2d 494, 496 (6th Cir. 1987). He has not exhausted his state

7

remedies if he has merely presented a particular legal theory to the courts without presenting each factual claim. Pillette, 824 F.2d at 497-98. The claims must be presented to the state courts as a matter of federal law. "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." Anderson v. Harless, 459 U.S. 4, 6 (1982); see also Duncan v. Henry, 513 U.S. 364, 366 (1995)(per curiam)("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.").

The state court decision must rest primarily on federal law. Coleman v. Thompson, 501 U.S. 722, 734-35 (1991). If the state court decides a claim on an independent and adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, the petitioner ordinarily is barred by this procedural default from seeking federal habeas review. Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977). However, the state-court decision need not explicitly address the federal claims; instead, it is enough that the petitioner's brief squarely presents the issue. Smith v. Digmon, 434 U.S. 332 (1978) (per curiam); see also Baldwin v. Reese, 541 U.S. 27, 30-32 (2004) (a

federal habeas claim is fairly presented to a state appellate court only if that claim appears in the petitioner's brief).

When a petitioner's claims have never been actually presented to the state courts but a state procedural rule prohibits the state court from extending further consideration to them, the claims are deemed exhausted, but procedurally barred. Coleman, 501 U.S. at 752-53; Teague v. Lane, 489 U.S. 288, 297-99 (1989); Wainwright v. Sykes, 433 U.S. at 87-88; Rust, 17 F.3d at 160.

A petitioner confronted with either variety of procedural default must show cause for the default and that he was prejudiced in order to obtain federal court review of his claim. Teague, 489 U.S. at 297-99; Wainwright v. Sykes, 433 U.S. at 87-88. Cause for a procedural default depends on some "objective factor external to the defense" that interfered with the petitioner's efforts to comply with the procedural rule. Coleman, 501 U.S. at 752-53; Murray v. Carrier, 477 U.S. 478, 488 (1986).

A petitioner may avoid the procedural bar, and the necessity of showing cause and prejudice, by demonstrating "that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. The petitioner must show that "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Schlup v. Delo, 513 U.S. 298, 327 (1995)(quoting Murray, 477 U.S. at 496). "To establish the requisite probability, the petitioner must show that

9

it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Id.

V.  ANALYSIS OF THE MERITS AND SUA SPONTE DISMISSAL

Although the Court has concluded that it has subject-matter jurisdiction over the petition, it is clear that the claims presented warrant a sua sponte dismissal of the petition. Petitioner raised Issues 1-6 with the trial court during his post-conviction proceedings. The trial court issued the following findings of fact and conclusions of law with regard to these issues:

> The petitioner ... has filed a petition setting forth a number of grounds which he asserts entitles him to post-conviction relief. The petition is long and rambling and in addition to checking almost all of the grounds on the form designated by the Tennessee Supreme Court, the defendant has attached ten handwritten pages setting forth facts in support of his claims for relief. One need only read these ten rambling pages to realize the frivolous and meritless nature of the petition. For example, he claims because sentencing occurred on his birthday that the court had purposely discriminated against the petitioner. The petitioner also claims that the Grand Jury as well as the jury venire was unconstitutionally impaneled because of discrimination against minorities. The petitioner produced absolutely no evidence to suggest in any way that there was any form of systematic exclusion of any minority.

State v. Beckham, 2005 WL 2878163 at *3. Although Petitioner appealed the denial of post-conviction relief, he raised only two issues: that trial counsel was ineffective because he "did not prepare an adequate defense by ignoring his medical and mental health background and failing to call Defendant's mother as a

10

witness at trial." Id. at *5. He did not raise the issues presented in this habeas petition.

The issues of this petition have never been presented to or substantively addressed by the Tennessee Court of Criminal Appeals. Further presentation of these claims in state court is barred by Tennessee's post-conviction petition statute of limitations and by Tennessee's one-petition rule. See Tenn. Code Ann. §§ 40-30-202(a),(c)(1997). Thus, all issues have been exhausted through Beckham's procedural default, and he has no avenue remaining for presentation of his claims given the state statute of limitations on state post-conviction relief.

The Sixth Circuit has upheld the dismissal of a Tennessee prisoner's habeas petition as barred by a procedural default caused by his failure to file within the Tennessee statute of limitations on post-conviction relief. Hannah v. Conley, 49 F.3d 1193, 1194-95 (6th Cir. 1995)(construing first state statute of limitations). The Court examined the first post-conviction statute of limitations and stated that "the language of Tenn. Code Ann. § 40-30-102 is mandatory." Id. at 1195. Petitioner's claims are exhausted by this procedural default. He cannot, therefore, obtain habeas relief in this Court. Crank v. Duckworth, 969 F.2d 363, 365-66 (7th Cir. 1992)(holding upon appeal after remand that attack on enhancing state sentence procedurally barred). This procedural default operates as a complete and independent procedural bar to

federal habeas review of the claims presented. This Court must honor the state court's invocation of its procedural bar. Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991).

Insofar as the petition may be construed to allege that ineffective assistance of post-conviction counsel constitutes cause and prejudice for Beckham's default, "the right to appointed counsel extends to the first appeal of right, and no further." Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). Thus, the failure of Petitioner's counsel to raise these claims in the appeal of the denial of post-conviction relief could not amount to ineffective assistance that would constitute cause for Beckham's procedural default of the claims in the post-conviction proceedings. United States ex rel. Johnson v. People of State of Ill., 779 F. Supp. 81, 83 (N.D. Ill. 1991). Beckham cannot establish cause and prejudice for his procedural default and presents no tenable claim of factual innocence. Thus, he cannot avoid the procedural bar erected by the state post-conviction statute of limitations and cannot seek federal habeas relief on any issues presented in this petition. The petition is DISMISSED.

V. APPEAL ISSUES

The Court must also determine whether to issue a certificate of appealability ("COA"). Twenty-eight U.S.C. § 2253(a) requires a district court to evaluate the appealability of its decision dismissing a § 2254 habeas petition and to issue a certificate of

12

appealability ("COA") only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see also Fed. R. App. P. 22(b); Lyons v. Ohio Adult Parole Auth., 105 F.3d 1063, 1073 (6th Cir. 1997)(district judges may issue certificates of appealability). No § 2254 petitioner may appeal without this certificate.

In Slack v. McDaniel, 529 U.S. 473, 483-84 (2000), the Supreme Court stated that § 2253 is a codification of the standard announced in Barefoot v. Estelle, 463 U.S. 880, 893 (1983), which requires a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'" Slack, 529 U.S. at 484 (quoting Barefoot, 463 U.S. at 893 & n.4).

The Supreme Court has cautioned against undue limitations on the issuance of certificates of appealability:

> [O]ur opinion in Slack held that a COA does not require a showing that the appeal will succeed. Accordingly, a court of appeals should not decline the application of a COA merely because it believes the applicant will not demonstrate an entitlement to relief. The holding in Slack would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief. After all, when a COA is sought, the whole premise is that the prisoner "'has already failed in that endeavor.'"

Miller-El v. Cockrell, 537 U.S. 322, 337 (2003) (quoting Barefoot, 463 U.S. at 893).  Thus,

> [a] prisoner seeking a COA must prove "'something more than the absence of frivolity'" or the existence of mere "good faith" on his or her part. . . . We do not require petitioners to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

Id. at 338 (quoting Barefoot, 463 U.S. at 893); see also id. at 342 (cautioning courts against conflating their analysis of the merits with the decision of whether to issue a COA; "The question is the debatability of the underlying constitutional claim, not the resolution of that debate.").[1]

In this case, the issues presented by Petitioner's petition are procedurally defaulted.  Because he cannot present a question of some substance about which reasonable jurists could differ, the Court DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2254 petitions.  Kincade v. Sparkman, 117 F.3d 949, 951 (6th Cir. 1997).  Rather, to appeal in forma pauperis in a § 2254 case, and thereby avoid the $455 appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, Petitioner must seek

---

[1] The Supreme Court also emphasized that "[o]ur holding should not be misconstrued as directing that a COA always must issue."  Id. at 337.  Instead, the COA requirement implements a system of "differential treatment of those appeals deserving of attention from those that plainly do not."  Id.

14

permission from the district court under Federal Rule of Appellate Procedure 24(a). Kincade, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, Petitioner must file his motion to proceed in forma pauperis in the appellate court. See Fed. R. App. P. 24(a)(4)-(5).

In this case, for the same reasons it denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal in forma pauperis is DENIED. If Petitioner files a notice of appeal, he must also pay the full $455 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.

IT IS SO ORDERED this 21st day of February, 2008.

                                                s/ J. DANIEL BREEN
                                                UNITED STATES DISTRICT JUDGE